Marvin NEIMAN d/b/a Concourse
Nursing Home, Plaintiff,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES et ano., Defendants.

No. CV–83–5447.

United States District Court,
E.D. New York.

Sept. 17, 1988.

See also 722 F.Supp. 950

Marvin Neiman, New York City by Mark Binsky, for plaintiff.

Andrew Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by David Nocenti, for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff, a nursing home operator, commenced this action seeking review of an administrative decision relating to the amount of Medicare reimbursement due plaintiff for fiscal years ended December 31, 1976, through December 31, 1979. This Court has jurisdiction over the action based upon 42 U.S.C. § 1395oo (f).

This matter is presently before the Court on plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and defendants' cross-motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The statutory background of this lawsuit is set forth in this Court's opinion granting defendants' motion for summary judgment with respect to plaintiff's sixth cause of action, which is being filed simultaneously with this decision.

Plaintiff's motion and defendants' cross-motion raise three issues: (1) whether plaintiff's drug storage space should be considered an ancillary cost center, (2) whether Part B ancillary costs should be apportioned by "Method E" PRM-1 (Provider Reimbursement Manual) § 2208.3(E), or by "Method A" PRM-1 § 2208.3(A), and (3) whether the salaries of employees assigned to transport patients from routine care areas to the physical, speech, and occupational therapy areas can properly be considered an ancillary cost.

The following facts are derived from the testimony and exhibits offered at the administrative hearing. Plaintiff is a 240-bed skilled nursing facility and provides services to both Medicare and non-Medicare patients. In return for providing services to Medicare beneficiaries, plaintiff is reimbursed by the Department of Health and Human Services ("HHS") for the "reasonable cost" of furnishing these services. 42 U.S.C. § 1395x(v)(1)(A). HHS defines "reasonable cost" as costs actually incurred, excluding unnecessary costs.

HHS enters into agreements with various insurance companies to process Medicare program claims received from care providers such as plaintiff. 42 U.S.C. § 1395h. In the present case, Travelers Insurance Company served as the intermediary and is also named in this action as a defendant. These intermediaries review the providers' claims and annual reports and make determinations of the total cost HHS will recognize as a "reimbursable" Medicare cost reimbursement. However, as is the case here, when a provider is unsatisfied with the intermediary's determination, it may request an administrative hearing before the Provider Reimbursement Review Board (the "Board"). 42 U.S.C. § 1395oo (a). Decisions of the Board constitute the Secretary's final decision, unless within sixty days of the provid-

er receiving notice of the Board's decision the Secretary reverses, affirms, or modifies the Board's decision on his own. 42 U.S.C. § 1395oo (f)(1).

The determination in question is for claims filed with Travelers for the years 1976 through 1979. Plaintiff questions both Travelers' determination and the Board's subsequent affirmance of that determination[1] of the reasonable costs incurred for both routine services (bed, board, nursing care, and minor medical and surgical supplies) and ancillary services (*inter alia,* physical, speech, and occupational therapy, and prescription drugs).

Under the Medicare statute, a storage space for prescription drugs may be considered an ancillary cost. 42 U.S.C. § 1395x(v)(1)(A), 42 C.F.R. § 404.453(d)(1). Plaintiff unsuccessfully argued at the administrative hearing that Travelers improperly determined that costs of the prescription drug storage space for the years 1976 through 1979 were routine service costs.

This determination decreased plaintiff's reimbursement because Medicare beneficiaries' utilization of services associated with ancillary costs is significantly higher than their utilization of services associated with routine costs. As a result, if the cost of maintaining the room is regarded as an ancillary cost, a higher reimbursement rate will apply.

Plaintiff offered no documentation indicating whether the drugs stored in the room were prescription or non-prescription. However, plaintiff claims that the storage space was developed pursuant to a regulation of the New York State Department of Health which requires a room for the storage and safeguarding of drugs. Plaintiff's witness, Dr. Leon Singer, Concourse's medical director, stated that 75% of the 5'-by-6' space was used for the storage and protection of prescription drugs, including narcotics and tranquilizers. The remaining 25%, he claimed, was used for non-prescription drugs and "a small amount" of surgical items for the nurses' and doctors' convenience.

Plaintiff also unsuccessfully disputed Travelers' use of Method A for determining plaintiff's 1976 through 1978 Part B ancillary costs. Part A of the Medicare program covers institutional health costs such as inpatient hospital care, extended care services, home health services, and hospice care. 42 U.S.C. §§ 1395c through 1395i–2. Part B supplements Part A's coverage by insuring against medical expenses such as physician services, therapy, and diagnostic tests. 42 U.S.C. §§ 1395j through 1395w. Method A calculates costs with the following equation: (Medicare/Total Charges) × (Total Ancillary Costs). Plaintiff claims that the figures that were inserted into the equation were too low because Travelers improperly refused to process certain Part B Medicare bills (the subject of plaintiff's sixth claim), thus decreasing the numerator. Plaintiff also claims that Travelers' determination that the drug storage space and the salaries of certain transporters were routine costs improperly decreased "total ancillary costs."

Plaintiff contends that Method E should have been used. Method E is calculated as follows: (2.5/100) × (98/100) × (average per diem routine and ancillary service costs) × (Medicare Part B inpatient days). Had Method E been used, plaintiff claims that it would have received $585,161 more in reimbursement.

Plaintiff also disputes Travelers' determination that the salaries of certain nursing aides and the costs of their supervision from 1977 through 1979 were routine and not ancillary costs.

As part of its program to provide rehabilitative therapy for its patients, plaintiff trains its nursing aides in basic rehabilitative therapy such as the correct way to exercise the patients. As part of this training, nursing aides work with the physical and occupational therapy departments (ancillary departments) as transporters and therapists' assistants for six weeks. Each department is assigned one transporter and one assistant. Therefore, at any given time, a total of four nursing aides worked for these departments. After the six-week

---

1. The Secretary declined to review further the Board's decision.

period ends, each nursing aide returns to his or her general duties in a routine service area, and another nursing aide takes the place of the trained aide for a six-week rotation.

The transporter transports the patients from their rooms to the therapy departments. Once in the therapy department, the transporter watches over and helps the therapist lift and move the patient. The therapy assistant furnishes any necessary assistance to the therapist but, unlike the transporter, does not transport the patient in and out of the department.

During the six weeks, the nursing aides continue to punch their nursing department time cards. Likewise, their progress is monitored by, and any discipline is meted out through, the nursing department.

The plaintiff, in its cost reports, allocated the salaries of these aides to the therapy departments, rather than the nursing department. Plaintiff introduced payroll documentation to demonstrate that the aides were employed. However, plaintiff did not provide documentation with regard to which nurses' aides worked for the therapy departments in any given six-week period, what they did, and how many hours a day they performed ancillary work.

The Board determined that the aides' salaries were routine service costs because of lack of documentation, a presumption that transportation is a routine service, and the fact that the aides were permanent employees of the nursing department, a routine cost center. The Board also reversed a previous 1977 determination by Travelers that these aides performed ancillary services.

## DISCUSSION

■ In determining reasonable costs, the Board's decision may be reversed only if it is arbitrary, capricious, not supported by substantial evidence or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A); *St. Mary's Hospital v. Blue Cross & Blue Shield Ass'n,* 788 F.2d 888, 890 (2d Cir.1986); *Friedman v. Heckler,* 765 F.2d 383, 384 (2d Cir.1985). The construction and application of a statute by the agency charged with its administration is entitled substantial deference unless it is inconsistent with the terms of the statute itself. *Friedman v. Heckler, supra,* 765 F.2d at 386; *Grocery Manufacturers of America, Inc. v. Gerace,* 755 F.2d 993, 1001 (2d Cir.1985). Thus, the Provider Reimbursement Manual, although merely a manual interpreting the Medicare statute and not a regulation in itself, is entitled to be given weight. However, the manual is without force of law. *St. Mary's Hospital, supra,* at 890.

■ This Court must review the whole record or those parts of it cited by the parties in making a determination. 5 U.S.C. § 706. The review, however, is confined to the decision of the agency and the evidence on which it was based. *De novo* review of questions of fact is authorized only when the agency's factfinding procedures are inadequate or when issues that were not before the agency are raised in a proceeding to enforce non-adjudicatory agency action. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Neither of these two situations exist here.

■ Plaintiff's contention disputing the Board's determination that certain drug storage space was a routine cost center lacks merit. The Board found that, due to lack of documentation, plaintiff had failed to demonstrate that the primary function of the room was to store prescription drugs.

Costs of non-revenue producing cost centers are allocated to the revenue-producing centers which they serve. 42 C.F.R. § 405.453(d)(1). Indirect costs of services are considered in the reimbursement calculation. 42 U.S.C. § 1395x(v)(1)(A). A prescription drug storage room is an indirect cost of providing prescription drugs to individual patients—an ancillary service. Thus, a prescription drug storage room is considered an ancillary cost.

Dr. Singer testified for plaintiff that approximately 75% of the storage room was used for prescription drugs. The Board did not find Dr. Singer's testimony incredible.

Although Dr. Singer was an interested witness, there was in fact little reason to question his credibility or veracity. Had he testified untruthfully, it is doubtful that he would have characterized the room as being partially (25%) filled with non-prescription drugs and medical supplies. Such a characterization decreased plaintiff's reimbursement. Dr. Singer's testimony regarding the nursing aides' workday during their six-week therapy rotation is equally indicative of his honesty. He was unwilling to account for the transporters' and therapy assistants' whereabouts beyond the hours that he himself was working in the building. Thus, since he arrived at work two hours after the nursing aides did, he was unwilling to testify to their whereabouts during these two hours, even though he assumed they were working in their respective therapy departments. Once again, this testimony decreased plaintiff's recovery. Dr. Singer's testimony that 75% of the space was used to store prescription drugs went uncontradicted. Nevertheless, the Board refused to classify the room as used for prescription drug storage based on an absence of adequate documentation to support it.

Providers receiving reimbursement must provide adequate cost data. Costs must be demonstrated by financial and statistical records which are capable of verification by qualified auditors. 42 C.F.R. § 405.453. Defendants argue that, because plaintiff did not provide any verifiable documentation demonstrating that the room was utilized for the storage of prescription drugs, plaintiff has not provided adequate cost data and, thus, has lost its right to the reimbursement it seeks.

Defendants cite *Daviess County Hospital v. Bowen*, 811 F.2d 338 (7th Cir.1987), to demonstrate the degree of weight afforded to the documentation provisions of the Medicare statute and the Provider Reimbursement Manual. In that case, the Seventh Circuit reversed a district court's judgment that, despite poor records, the provider could receive reimbursement for therapy services. The Seventh Circuit's decision found that adequate documentation was a prerequisite to recovery. As in *Daviess County Hospital,* the matters in question were easily documentable. In *Daviess,* the manual sets forth specific requirements for documentation for therapy services, including a daily log. PRM–1 § 1417(A). Moreover, the plaintiff had previously been warned by the intermediary that it had not been complying with the recordkeeping requirements of the manual.[2] In the present case, it was not unreasonable for defendant to conclude that records of the sort necessary to assure the security of narcotic and prescription drugs should have been kept and made available to the Secretary's representatives to back up the otherwise vague testimony of Dr. Singer that "75%" of the space in the room was used for stogage of such drugs. Thus, quite apart from the demands of the Secretary for documentation subject to audit to back up *any claim* for reimbursement, the Secretary was clearly reasonable in asking for documentation of the sort required to be maintained in the ordinary course of the hospital's business to ensure that its stock of narcotic and prescription drugs were not subject to pilferage and loss.

Plaintiff's assertion that Part B ancillary costs should have been calculated by using Method E must also fail. In *Friedman v. Heckler,* 765 F.2d 383, 388 (2d Cir.1985), the Court of Appeals for this Circuit held that Method E is designed for use by a skilled nursing home that has an all-inclusive rate and cannot be used by a facility that has a charge structure for individual services rendered. *See* PRM–1 § 2208.2. Accordingly, plaintiff's claim that Travelers should have calculated physical therapy (ancillary) costs by Method E must be re-

---

**2.** Plaintiff cites HIM–13 § 4116, 4116.1 (a manual similar to the Providers' Reimbursement Manual) to back up its contention that onsite observation would have been the most appropriate form of verification in this situation. A floor plan of the provider's facility, according to § 4116.1, must be "tested during an audit or during an intermediary onsite visit." However, this section applies to a "permanent reference file" that an intermediary must keep on each provider. It does not refer to the documentation or records necessary to receive reimbursement.

jected since the record makes clear that plaintiff was a skilled nursing facility with a charge structure, charging separately for ancillary services. Thus, plaintiff is not entitled to use Method E.

Plaintiff seeks to avoid the application of *Friedman* by relying on PRM–1 § 2208.3, which states:

"[T]he procedures outlined in this section [Methods A through E] have not been specifically directed towards the all-inclusive rate and no-charge structure hospital-skilled nursing facility complex."

In *Franklin Nursing Home v. Blue Cross Blue Shield*, CCH Medicare and Medicaid Guide ¶ 3,637, PRRB Hearing Dec. Nov. 7, 1983, the Board adopted the § 2208.3 approach.

However, for PRM–1 § 2208.3 to be applicable, the provider must be a skilled nursing facility complex. *Friedman, supra*, at 388, PRM–1 § 2208.3. Just as plaintiff's nursing home in *Friedman*, a 205–bed skilled nursing facility is not a "complex," and therefore plaintiff, cannot use PRM–1 § 2208.3 for access to Method E.

Finally, plaintiff disputes Travelers' determination that the salaries of the short-term therapy assistants and transporters are routine costs. These aides, plaintiff claims, provided essential services to the therapy department. Had the nurses' aides not rotated for six weeks in these departments, plaintiff argues that permanent transporters and therapy assistants would have been hired and the expense of their salaries reimbursed as ancillary costs.

■ As already noted, the Medicare program requires that care providers provide verifiable cost data in order to receive reimbursement. 42 C.F.R. § 405.453(a). This requirement applies to the salaries of transporters, *St. Margaret's Hospital v. Blue Cross Ass'n*, CCH Medicare and Medicaid Guide ¶ 32,246, HCFA Admn. Dec., Sept. 20, 1982, and therapy assistants.

■ Plaintiff claims that, although the transporters and assistants were paid, monitored, and supervised by the nursing department, they worked for the therapy departments. However, plaintiff has provided no documentation or records detailing who the rotating transporters and assistants were and when they worked in the ancillary departments. Since these nurses' aides continued to punch their nursing department time cards, plaintiff's records reflect that the nurses' aides were employed by the nursing department during the period of time in question. As for their actual functions, plaintiff relied on the testimony of Marvin Neiman, the owner and operator of Concourse Nursing Home, and Dr. Singer. Neither witness' testimony went beyond generalizations about the existence of this educational rotation program; and, unlike the case with the prescription drugs issue, there is no record anywhere that these nurses were needed and used by the hospital in the way in which the witnesses described.

The lack of this basic information precludes the allocation of the nursing aides' salaries to an ancillary cost center. However, because the records do demonstrate that nursing aides were employed by the nursing department, the salaries can be allocated to a routine cost center in accordance with 42 C.F.R. § 405.453.

■ Even if there had been adequate cost data, the transporters' salaries still may not have been appropriately allocated to an ancillary cost center.[3] Transportation may be considered a routine service even when it involves special care for particular handicaps. For example, particularized nursing services such as handfeeding and incontinency care are considered routine. PRM–1 § 2203.1(A). Administrative decisions are inconsistent as to whether transporter costs are routine or ancillary. *See Community Hospital of Indianapolis, Inc. v. Blue Cross and Blue Shield*, CCH Medicare and Medicaid Guide ¶ 33,561, PRRB Dec. No. 83–D150, Dec. 7, 1983;

**3.** Under PRM–1 §§ 2220, 2220.1, therapy assistants' salaries may, when certain conditions are met, be allocated to an ancillary cost center.

However, the provisions of 42 C.F.R. § 405.453 must still be met.

*Sisters of Charity Hospital v. Blue Cross Ass'n,* CCH Medicare and Medicaid Guide ¶ 31,073 PRRB Dec. No. 81–D50, *but see St. Margaret's, supra,* and *Mercy Hospital Association v. Blue Cross Ass'n,* CCH Medicare and Medicaid Guide ¶ 32,048, HCFA Admn. Dec., May 28, 1982.

The transporters' chief function was to transport patients from a routine area to an ancillary area (therapy department). No evidence indicated that, once in the therapy department, they did anything beyond minor lifting (e.g., helping the patient stand) and observing the patient—chores that could have been handled by either therapy or nursing assistants. Transporting a patient from a routine department to an ancillary department is not necessarily an ancillary service. *Community Hospital of Indianapolis, supra; Sisters of Charity Hospital, supra.* Just as certain patients need help eating, a routine services under PRM–1 § 2203.1(A), others need help walking. Some patients need transportation to the cafeteria, others to the recreation room, and still others to the therapy department. Unlike a service provided only to those patients undergoing therapy, all patients in need of assistance receive a transporter's assistance. Transportation is, thus, most easily seen as a routine and generalized service provided by any skilled nursing home. In either event, the salaries of these nurses' aides were properly allocated to the nursing department.

For the reasons set forth above, defendants' motion for judgment on the pleadings in its favor with respect to plaintiff's fifth claim is granted.

SO ORDERED.