Patricia **KILMER**, Plaintiff,

v.

**Michael O. LEAVITT, Secretary of Health and Human Services, Defendant.**

Case No. 2:07–cv–1094.

United States District Court,
S.D. Ohio,
Eastern Division.

March 10, 2009.

As Modified March 26, 2009
Nunc Pro Tunc.

Elizabeth Ilgen Cooke, Columbus, OH, for Plaintiff.

John J. Stark, U.S. Attorney Office, Columbus, OH, for Defendant.

## OPINION AND ORDER

GREGORY L. FROST, District Judge.

This case is an appeal from the denial of Medicare part D benefits. For the reasons that follow, the Court affirms.

### I. Background

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides for the Medicare program, which is a health insurance program for qualifying individuals that is funded and administered by the federal government. The Secretary of Health and Human Services ("the Secretary") administers the Medicare program, one component of which is a voluntary prescription drug benefits program constituting Medicare Part D. *See* 42 U.S.C. § 1395w–101 *et seq.* In 2006, Part D began to cover a range of outpatient prescription drugs, which previously had been covered only in select instances. These Part D benefits are provided by a plan sponsor, which, broadly described, is required to provide qualified prescription drug coverage, 42 U.S.C. § 1395w–102(a)(1), and can provide supplemental prescription drug coverage, 42 U.S.C. § 1395w–102(a)(2). A Part D plan sponsor need not provide coverage for a Part D drug that is not reasonable and necessary for circumstances specified in the statutory framework or that is not prescribed in accordance with the plan or the Medicare Act. *See* 42 U.S.C. §§ 1395w–102(e)(3) and 1395y(a). To qualify for coverage, an outpatient prescription drug must be used for a medically accepted indication, *see* 42 U.S.C. 1395w–102(e)(1), which at the time the events involved in this case occurred meant that it must be used as approved under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, or used as supported by at least one citation included or approved for inclusion in the American Hospital Formulary Service Drug Information, the United States Pharmacopeia–Drug Information (or its successor publications), or the DRUGDEX Information System, *see* 42 U.S.C. § 1396r–8(k)(6).[1]

---

1. In addition to the stated provisions, Congress expanded the definition of "medically accepted indication" effective January 1, 2009, to include drugs utilized in an anticancer chemotherapeutic regimen as supported by peer-reviewed medical literature. *See* 42 U.S.C. § 1395w–102(e)(4)(A)(i). This and other changes made after the decisions below were filed do not change the outcome of this appeal. At most, however, they do lend some limited support to the Secretary's argument that if the "medically accepted indication" clause discussed *infra* were not a limitation but simply an illustration, then there would be no need to effectuate such amendment. Moreover, if Congress disagreed with the regulation construing the definitions at issue in this appeal, Congress could have taken the opportunity presented by the amendments to change the statutory scheme so as to alter or correct the Secretary's interpretation set forth in 42 C.F.R. § 423.100. Congress did not so act. This is an example of a dog not barking.

Patricia Kilmer is an adult female and plan participant who suffers from systemic lupus erythematosus. As one of her numerous complications related to this condition, Kilmer is also afflicted with a disorder known as heterotopic bone ossification, which means that bone has developed in what would otherwise be soft tissue in multiple locations in her body, such as her joints. Kilmer is therefore unable to walk, stand, or move without assistance, and is confined to a wheelchair.

As part of her treatment regimen, Kilmer undergoes physical therapy in which her calcified joints are moved, which often causes breakthrough pain, or pain that "breaks through" the pain medicine she regularly takes. To treat this breakthrough pain, her treating physician prescribed a painkiller known as oral transmucosal fentanyl citrate, which is also known as Actiq.[2] Kilmer regularly took Actiq until 2006, when Cephalon, Inc., the drug's manufacturer, discontinued the "compassionate use" program under which she received Actiq. The Cigna Medicare Part D plan in which Kilmer is enrolled then denied her coverage for the drug.[3] Kilmer pursued the administrative appeals process, which eventually led to a May 8, 2007 decision in which an administrative law judge denied her coverage for Actiq. (Admin. R. at 12–23.) Her subsequent appeal of that unfavorable decision to the Medicare Appeals Council resulted in an August 21, 2007 decision that adopted the findings and conclusions of the administrative law judge. (Admin. R. at 3–4.)

Kilmer then timely filed this appeal under 42 U.S.C. § 1395w–104(h)(1), which incorporates applicable provisions of 42 U.S.C. § 1395w–22(g)(5) and 42 U.S.C. § 405(g). (Doc. #5.) The parties have completed briefing on the issues involved, including supplemental filings permitted by leave of court, and the appeal is now ripe for disposition. (Doc. #16, 19, 24, 27, 30, 33.)

## II. Analysis

### A. Standard involved

In reviewing a decision to deny coverage, this Court does not consider the case *de novo* and does not resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). Rather, the Court's review is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985); *Fraley v. Secretary*, 733 F.2d 437, 439–40 (6th Cir.1984); *Kirk*, 667 F.2d at 536. If the denial of coverage is supported by substantial evidence, the

---

2. Actiq apparently comes in lollipop form for use as a pain management drug for cancer patients and in lozenge form for use as anesthesia.

3. The plan asserted that it covered the form of the drug Kilmer sought only to treat breakthrough pain for cancer patients who had developed tolerance to other forms of pain management.

Court must affirm even if the Court would decide the matter differently, *see Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (*en banc*).

## B. Discussion

### 1. *Actiq as a Covered Part D Drug*

■ The threshold question in this appeal is whether Medicare covers a drug under part D when that drug is not used for a "medically accepted indication." Kilmer's first argument on appeal posits that the administrative law judge erred in concluding that Actiq fails to qualify as a covered part D drug. Although conceding that the off-label use involved here—use not approved by the FDA—is not a medically accepted indication, Kilmer argues that there is no requirement that covered drugs be used only for medically accepted indications. Thus, she reasons, coverage should exist because her use is "medically necessary," a requirement for qualifying off-label prescriptions that neither party disputes.

The Court begins with the definition of a covered Part D drug. The statutory scheme provides that

the term "covered part D drug" means—

(A) a drug that may be dispensed only upon a prescription and that is described in subparagraph (A)(i), (A)(ii), or (A)(iii) of section 1396r–8(k)(2) of this title; or

(B) a biological product described in clauses (i) through (iii) of subparagraph (B) of such section or insulin described in subparagraph (C) of such section and medical supplies associated with the injection of insulin (as defined in regulations of the Secretary),

and such term includes a vaccine licensed under section 262 of this title

(and, for vaccines administered on or after January 1, 2008, its administration) and any use of a covered part D drug for a medically accepted indication (as defined in paragraph (4)).

42 U.S.C.A. § 1395w–102(e)(1). It is this statutory definition that presents the first point at which the parties' analyses diverge.

Kilmer argues that the last paragraph of § 1395w–102(e)(1) cannot be read as a limitation on the preceding (A) and (B) paragraphs, which would mean that there is no requirement that all covered part D drugs be used only for a medically accepted indication. To support this proposition, Kilmer asserts that the reference to a medically accepted indication "is most naturally read as expressing an *addition* to, or illustration of, part D coverage." (Doc. # 24, at 4.) If the clause at issue is a limitation on (A), then Actiq is not a covered part D drug here, but if the clause is merely illustrative, then the broad language of (A) would endorse coverage.

This Court is constrained by the plain language of the statutory scheme to conclude that the medically accepted indication clause must be read as a limitation. The Court agrees with Kilmer that the clause's use of "any use of a covered part D drug" points to an understanding on the part of Congress that the meaning of " 'covered part D drug' has already been substantially given." (Doc. # 24, at 5–6 (emphasis deleted).) But the key word in Kilmer's proposition is "substantially"; absent that word, this Court could not agree with Kilmer's isolated statement. This is because the statute provides in (A) two initial conditions that define a covered part D drug under that subparagraph: one, that the drug that may be dispensed only upon a prescription, and two, that the drug is also described in select provisions of 42 U.S.C. § 1396r–8(k)(2). This provides a substantial portion of the definition of—

but not the complete definition of—a covered part D drug. The last paragraph of § 1395w–102(e)(1) then adds a third condition, specifically that any use of a drug (a drug that satisfies the first two requirements for a covered part D drug) be for a medically accepted indication.

To read the statute otherwise would be to ignore the statute's use of the language "such term" in the clause "and such term includes ... any use of a covered part D drug for a medically accepted indication...." 42 U.S.C.A. § 1395w–102(e)(1). "Such term" refers back to "the term 'covered part D drug.'" *Id.* The specific reference is to covered part D drug, which means that the statutory scheme provides that the term *means* condition one (prescribed drug) and condition two (described-in-another-statute drug) and *includes* condition three (use is for medically accepted indication). Kilmer's construction, however, essentially reads out "such term" and alters a plain understanding of "includes" as it is used in this context.

Under Kilmer's reading of § 1395w–102(e)(1), covered part D drug *means* condition one and condition two and *includes as an example* what this Court has described as condition three. In other words, Kilmer reads the statute to say that a covered part D drug is condition one and condition two and includes (i.e., *an example of which is*) certain usage that *is not necessarily part of either condition.* It is not logical that the illustration would be of something that does not fall within the scope of either condition, however, because in that instance it could not be illustrative.

Congress specifically and expressly included "such term," which means that this Court must credit that usage as having some point—i.e., to make clear that the definition was continuing and that "in-

cludes" means in context essentially "also means" or "as well as" so that the "such term includes ..." clause means "a drug that is used for a medically accepted indication."

Kilmer's construction portrays "includes" as a euphemism for "covers" as opposed to a specific indication of a third condition. Context teaches that "includes" as used here is a linking word signifying an additional condition; it does not carry the meaning of "presents as an example" or "covers" as Kilmer implicitly asserts or even a meaning of "as well as but not limited to" given the express statutory imposition of three and only three conditions associated with subparagraph (A). Under Kilmer's construction, there would be no need to include the words "such term."

When the statute is understood according to this Court's reading of its plain language,[4] the relevant portions of the statute can be rephrased as follows:

the term "covered part D drug" means—

(1) a drug that may be dispensed only upon a prescription;

(2) a drug that is described in subparagraph (A)(i), (A)(ii), or (A)(iii) of section 1396r–8(k)(2) of this title; and

(3) a drug that is used for a medically accepted indication.

This construction gives effect to all of the language of § 1395w–102(e)(1) in context. It also comports with the understanding evinced by the federal regulation growing out of the statute in question.

The administrative law judge applied 42 C.F.R. § 423.100 in his denial of coverage. That regulation provides in relevant part that a

Covered Part D drug *means* a Part D drug that is included in a Part D plan's

---

4. Having concluded that the plain language of the statutory scheme evinces a non-ambiguous meaning, the Court need not and does not accept the parties' invitations to depart from the statutory text into the often unreliable realm of legislative history.

formulary, or treated as being included in a Part D plan's formulary as a result of a coverage determination or appeal under § 423.566, § 423.580, and § 423.600, § 423.610, § 423,620, and § 423.630, and obtained at a network pharmacy or an out-of-network pharmacy in accordance with § 423.124.

42 C.F.R. § 423.100 (emphasis added). The regulation goes on to state that a Part D drug means—

(1) Unless excluded under paragraph (2) of this definition, any of the following if used for a medically accepted indication (as defined in section 1860D–2(e)(4) of the Act)—

(i) A drug that may be dispensed only upon a prescription and that is described in sections 1927(k)(2)(A)(i) through (iii) of the Act.

(ii) A biological product described in sections 1927(k)(2)(B)(i) through (iii) of the Act.

(iii) Insulin described in section 1927(k)(2)(C) of the Act.

(iv) Medical supplies associated with the injection of insulin, including syringes, needles, alcohol swabs, and gauze.

(v) A vaccine licensed under section 351 of the Public Health Service Act and for vaccine administration on or after January 1, 2008, its administration.

(vi) Supplies that are directly associated with delivering insulin into the body,

such as an inhalation chamber used to deliver the insulin through inhalation. 42 C.F.R. § 423.100. No party asserts that the paragraph (2) exclusions referenced above are relevant here, and this Court finds no such relevance.

Thus, the Court is left with a regulation that ultimately defines a part D drug as subject to the limitation that it be used for a medically accepted indication.[5] Absent satisfaction of the medically accepted indication requirement, a drug is not a part D drug and therefore cannot be a covered part D drug.

Given the text of § 1395w–102(e)(1), this Court cannot accept Kilmer's analysis that the Department of Health and Human Service's statutory construction that informs the regulation is unreasonable under a *Chevron* analysis. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because the relevant portion of the statute is not ambiguous, the Court does not reach the issues of reasonableness and deference. *Id.* at 842, 104 S.Ct. 2778 (noting that in issues of statutory construction, "[i]f the intent of Congress is clear, that is the end of the matter"). But even if the Court were to find the statutory definition ambiguous—it is admittedly unartful in its composition (although its intent is evident)—this Court would never-

---

**5.** The regulation appears to treat the "vaccine" clause of § 1395w–102(e)(1) as essentially constituting a subparagraph (C) and the "medically accepted indication" clause as a limitation on what would then be subparagraphs (A) through (C). This construction would arguably comport with the Court's reading of the statute targeted by the regulation. Regardless of how best to label or set apart the statute's vaccine clause, it is important to note that the vaccine clause does not reference "covered part D drug" as the medically accepted indication clause does. The vaccine clause thus is best understood as a specific limitation on section § 1395w–

102(e)(1)(B)—the only subparagraph to which it could apply because a vaccine is a form of biological product—while the medically accepted indication clause serves as an overarching limitation on covered part D drugs generally, which means that it limits § 1395w–102(e)(1)(A) *and* (B), as well as the vaccine limitation (regardless of whether it is understood as carving out its own implicit, undesignated subparagraph, an unlabelled (C) category, or simply as recognizing and limiting (B)). In any event, the vaccine clause is simply a limitation that a form of biological product (i.e., vaccine) be licensed as described in the clause.

theless defer to the permissible and reasonable interpretation embodied in 42 C.F.R. § 423.100. *Id.* at 843, 104 S.Ct. 2778 (stating that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). Such a conclusion would be necessary because, as the United States Supreme Court has explained, "the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. 2778. Therefore, even if the Court were to assume that Kilmer is correct that the statutory scheme *could* be read in a variety of ways, this Court could still not say that the regulation interpretation is contrary to clear congressional intent. *Id.* at 843 n. 9, 104 S.Ct. 2778 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

Finally, Kilmer avers that she is entitled to coverage under 42 C.F.R. § 423.578. That regulation provides for exceptions procedures by Plan D sponsors that provide prescription drug benefits for Part D drugs and manage the benefit through the use of a formulary. 42 C.F.R. § 423.578(b). The regulation states that "[t]he Part D plan sponsor must grant an exception whenever it determines that the drug is medically necessary" consistent with a prescribing physician's supporting statement as described in the regulation and when the sponsor determines that "the drug would be covered but for the fact that it is an off-formulary drug." *Id.* But as the Secretary correctly notes, the regulation also provides that "[n]othing in this section may be construed to allow an enrollee to use the exceptions processes set out in this section to request or be granted coverage for a prescription drug that does not meet the definition of a Part D drug." 42 C.F.R. § 423.578(e). Thus, because Actiq is a non-formulary drug and is *not used for a medically accepted indication* in the circumstances found here, it does not qualify as a part D drug as discussed above and Kilmer cannot prevail by relying on the therefore inapplicable § 423.578(b) exception.

Given the foregoing, this Court cannot say that the administrative law judge erred. The decision below considered in substantial detail the plan, the relevant law, and the facts and concluded that Actiq was not being prescribed for Kilmer for a medically accepted indication, which meant that it failed to qualify for coverage under the atypical circumstances presented here.[6] This is an unfortunate but not an incorrect result.

---

**6.** The Court notes that Kilmer argues for the first time in her reply memorandum that the administrative law judge erred in by adopting an overly-narrow interpretation of "supported" in his analysis of the medically accepted indication requirement, which states as one acceptable alternative that use be "supported by ... the compendia." 42 U.S.C. § 1396r–8(k)(6). The Court discusses this requirement *infra*, but notes there that Kilmer's argument is wanting. First, Kilmer's belated initial raising of this argument in a reply brief waives, or more accurately forfeits, the argument. *See Books A Million,* *Inc. v. H & N Enters., Inc.,* 140 F.Supp.2d 846, 859 (S.D.Ohio 2001) ("It is well settled ... that a party may not raise an issue for the first time in a reply brief." (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 545 (6th Cir.2000))). Second, as the Secretary notes, the full requirement is that the use be "supported by one or more citations included or approved for inclusion in any of the compendia...." 42 U.S.C. § 1396r–8(k)(6). Kilmer ignores the citations requirement, which the Court finds dispositive of her argument. Thus, even if the Court

To be certain, this Court agrees with Kilmer's conclusion that the analysis adopted herein means that "Congress necessarily would have undertaken an unusual and tortuous approach to drafting the statutory definition of 'covered part D drug.'" (Doc. # 24, at 12.) But the process undertaken is a legislative prerogative. This Court is confined to looking at what was actually enacted by Congress and will not attempt to discern meaning based on speculation as to whatever strained or labored route gave birth to the enacted legislation; a possible better route to a potentially even more clear definition cannot override what definition did result based on whatever process produced the statutory definition.

Thus, in this case, what was enacted seems unjust on grounds of simple decency to Kilmer, whose apparently notably rare condition may never lead to coverage of the specific sort sought here under the current statutory scheme. But unfairness does not always equal unlawful, and there is no Medicare guarantee of comprehensive coverage. Just as the administrative law judge noted that he "may not promulgate law" despite Kilmer's situation being "a compelling one" (Admin. R. at 20), this Court is similarly constrained by the statutory scheme to conclude that Actiq does not constitute a covered part D drug under the specific circumstances presented in this appeal.

### 2. Equal Protection Challenge

■ Kilmer also argues that should this Court conclude that the Medicare statute precludes coverage here, the Court would stumble into an equal protection violation. The rationale behind this argument is that if "the Medicare statute forbids coverage for covered part D drugs not used for medically accepted indications," then it has

"the effect of irrationally and categorically excluding people like [Kilmer] from the prescription drug benefits provided to others." (Doc. # 24, at 18.) Individuals such as Kilmer who suffer from the atypical circumstances found here would forever fall outside the compendia, which means that their drug treatment would fall outside the scope of a medically accepted indication, which means that they would fall outside the prerequisite statutory definition. Ultimately, their drug would fall outside the scope of coverage. Thus, Kilmer offers that this Court must adopt an inclusive definition of the term "supported by the compendia" in order to avoid a constitutional issue.

The Secretary frames the issue not in terms of whether there is discrimination against those with rare conditions, but in a manner with which this Court agrees: "whether it is permissible for Congress to provide coverage for some off-label drug uses while denying coverage for others." (Doc. # 19, at 40.) He correctly posits that because Kilmer's case does not involve discrimination based on a suspect classification and does not involve a fundamental right, the rational basis test and not strict scrutiny applies. See F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); see also Does v. Munoz, 507 F.3d 961, 966 (6th Cir.2007) (explaining that rational-basis review involves asking whether "the statute

were to reach the merits of Kilmer's forfeited argument, the Court would agree with the analysis set forth in the secretary's sur-reply

on this issue, which the Court incorporates herein by reference. See Doc. # 27, at 11–15.

at issue is 'rationally related to legitimate government interests.'" (quoting *Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997))). Rational-basis review has been described as "a paradigm of judicial restraint." *Beach Communications, Inc.,* 508 U.S. at 314, 113 S.Ct. 2096.

The statutory scheme at issue here survives rational-basis review. It is axiomatic that in establishing the Medicare scheme, Congress was faced with difficult decisions about what to cover and what not to cover. These decisions mandate making distinctions, or else the resulting prescription drug benefit program would cover everything for everyone, all the time. *See Minnesota Senior Fed'n, Metro. Region v. United States,* 273 F.3d 805, 808 (8th Cir. 2001) ("Distributing Social Security and Medicare benefits is a massive undertaking which 'requires Congress to make many distinctions among classes of beneficiaries while making allocations from a finite fund.' *Bowen v. Owens,* 476 U.S. 340, 345, 106 S.Ct. 1881, 90 L.Ed.2d 316 (1986). Accordingly, the Supreme Court has rejected numerous equal protection challenges to the ways in which these benefits are distributed."). And for purposes of today's constitutional inquiry, it does not matter "whether the conceived reason for the challenged distinction actually motivated the legislature" or whether there is even an explanation of the distinction on the record supported by evidence and empirical data. *Beach Communications, Inc.,* 508 U.S. at 315, 113 S.Ct. 2096. What matters is that this rationale can support the distinction that Kilmer attacks.

The foregoing rationale alone proves dispositive of Kilmer's argument. *See id.* at 315–16, 113 S.Ct. 2096 ("Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.'" (quoting *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980))). No court should sit as a superlegislature and second-guess legislative action that has a sufficient basis, however fine the distinctions at play in the statute may be. *Id.* at 313, 113 S.Ct. 2096 ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). Thus, as the Sixth Circuit has explained, "[i]t is not difficult for a statute to survive rational basis review. The court is not limited to the defense proffered by [a defendant]; in order to defeat a statute subject to rational basis review, [a plaintiff] must negate 'every conceivable basis' that could support the statute." *Norton Constr. Co. v. U.S. Army Corps of Engineers,* 280 Fed.Appx. 490, 495 (6th Cir. 2008) (quoting *Hadix v. Johnson,* 230 F.3d 840, 843 (6th Cir.2000)). Because Kilmer has failed to defeat every conceivable basis supporting the legislative action at issue here, this Court cannot conclude that either 42 U.S.C.A. § 1395w–102(e)(1) or 42 C.F.R. § 423.100 are unconstitutional.

### 3. Coverage and Location of Physical Therapy

In her final argument on appeal, Kilmer asserts that even if the Court concludes that she is not entitled to coverage for Actiq used at her home, she is entitled to coverage for hospital use of Actiq. The Secretary argues that this Court cannot consider this argument because Kilmer raises it for the first time on appeal. Kilmer of course disagrees. She explains that "[w]hile it is true that [she] focused on coverage of Actiq for at-home use in the

proceeding before the [administrative law judge], her arguments below were not by their own terms necessarily limited only to at-home use of Actiq." (Doc. # 24, at 20.)

Review of the administrative record indicates that the decision below essentially focused on at-home use of Actiq. After describing the recognized use of Actiq for procedural sedation and analgesia ("PS & A"), the administrative law judge noted in his decision that "[o]n first blush, [Kilmer's] situation appears to fit this definition." (Admin. R. at 20.) The administrative law judge further explained, however, that "upon closer review, PS & A is a form of sedation that requires the presence of skilled medical professionals." (*Id.*) Proceeding to note that "[i]n the present case, [Kilmer's] mother assists with a significant amount of [Kilmer's] physical therapy," the administrative law judge concluded that "[i]t is evident that [Kilmer's] mother would not meet the criteria for those persons recommended to perform PS & A." (*Id.*) The administrative law judge proceeded to deny coverage based on a rationale that depended in large part on the involvement of Kilmer's mother in her therapy.

The administrative law judge was aware, however, that at least a portion of Kilmer's therapy did not involve Kilmer's mother. (Admin. R. at 14) ("[Appellant] also utilizes bands and weights, and works with a trainer at the YMCA two to three times per week"); *id.* at 20 ("In the present case, Appellant's mother assists with a *significant amount* of Appellant's physical therapy." (emphasis added).) But neither factual finding presents an instance of in-

hospital therapy involving those specialized types of healthcare providers whom the administrative law judge noted would fall under the compendia support.[7] Moreover, the sole reference in the administrative law judge's decision to in-hospital therapy does not target the type of therapy Kilmer described at the hearing.[8] *Compare id.* at 14 (administrative law judge decision stating that "[t]he Beneficiary has been treated by a physical therapist since 2005, in both inpatient and outpatient settings") *with* 418–19 (Kilmer's testimony regarding her at-home therapy and her therapy at the Hilliard, Ohio Y.M.C.A.). In short, the administrative law judge addressed a narrow issue, apparently because he correctly recognized that this was the only issue before him. At least one of Kilmer's counsel apparently agreed, arguing in closing at the hearing that "[w]ith Actiq. Ms. Kilmer can rehabilitate at home, with her mother, and one day hope to stand, to walk, and to return to her life." (Admin. R. at 457.) *Notably, no one argued for in-hospital usage as grounds for coverage.*

Although Kilmer points to areas of the record in which she does not expressly limit the scope of her appeal, none of these areas support the broader appeal she now asserts she pursued. For example, Kilmer references her brief to the administrative law judge, but that document simply refers to her therapy; the brief does distinguish between at-home therapy and in-hospital therapy. (Admin. R. at 52–63.) Nor does a subsequent supplemental brief distinguish between the location of therapy or

---

7. This Court is not the finder of fact, and when there is substantial evidence supporting the administrative law judge's findings of fact, the Court cannot displace the administrative law judge as the decision maker.

8. The hearing before the administrative law judge referenced in-hospital therapy. Kilmer

was asked at the hearing whether she was able to have inpatient physical therapy. In the transcript, her mother explains that Kilmer has been released from that therapy and that, absent a change in circumstances or reevaluation, Kilmer will not be participating in such therapy. This does not raise an in-hospital argument for coverage.

its providers. (*Id.* at 27–29.) The absence of evidence of having made an argument for in-hospital usage does not mean that such an argument was made. Kilmer is attempting to prove the existence of her argument by pointing to no evidence of that specific argument and implicitly urging this Court to accept three propositions: first, that her counsel briefed such an argument without ever once actually referencing the argument, second, that her counsel engaged in oral argument for coverage at the hearing specifically for only at-home usage while fully aware that in-hospital usage was an alternative part of the appeal, and third, that the administrative law judge failed to recognize that there was more than one issue before him. None of these propositions are credible in the absence of any supporting evidence.

This Court must therefore conclude that Kilmer has attempted to raise in-hospital usage as a ground for coverage for the first time on appeal to federal court. Accordingly, the Court must agree with the Secretary that such action is impermissible and that Kilmer cannot obtain judicial review of this issue today. *See Cathedral Rock of N. Coll. Hill, Inc. v. Shalala,* 223 F.3d 354, 359 (6th Cir.2000).

### III.  Conclusion

For the foregoing reasons, the Court **AFFIRMS** pursuant to sentence four of 42 U.S.C. § 405(g) and **ORDERS** that the Clerk enter final judgment for the Secretary of Health and Human Services and terminate the captioned case upon the docket records of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**