**Andrew T. BREW, Plaintiff,**

v.

**Sylvia Mathews BURWELL, Secretary of the Department of Health and Human Services, Defendant.**

**16–CV–6178L**

United States District Court, W.D. New York.

Signed 06/12/2017

Andrew T. Brew, Corning, NY, pro se.

Mary Pat Fleming, U.S. Attorney's Office, Buffalo, NY, Defendant.

## DECISION AND ORDER

DAVID G. LARIMER, United States District Judge

Plaintiff Andrew T. Brew ("plaintiff"), acting pro se, brings this action against Secretary of Health and Human Services Sylvia Burwell (the "Secretary") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff seeks review of the Secretary's final decision denying him reimbursement for a prescription drug. The crux of the dispute is whether the drug at issue is, or should have been, covered by Medicare Part D.

The Secretary now moves for judgment on the pleadings affirming the denial of coverage and dismissing the complaint, pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. # 10). For the reasons that follow, that motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the underlying facts, summarized here, is presumed.

Plaintiff is enrolled in a Medicare Part D program and received prescription drug coverage through United Healthcare. In 2010, plaintiff was diagnosed with eosinophilic esophagitis, an inflammatory condition affecting the esophagus. He was prescribed Pulmicort Respules (Budesonide) in the form of a nebulizer solution. On or about January 8, 2015, the plaintiff was advised by his prescription drug plan that it would not cover the cost of Budesonide, because its use for his particular condition was not an FDA-approved treatment.

Plaintiff requested reconsideration, and on March 30, 2015 an independent contractor qualified by the Centers for Medicare & Medicaid Services ("CMS") reconsidered the denial and agreed that the Part D plan was not required to cover Budesonide, as used by plaintiff.

Plaintiff ultimately appealed to an administrative law judge ("ALJ"), and the ALJ upheld the reconsideration determination, on the grounds that Budesonide had not been prescribed to plaintiff for a "medically accepted indication," and was therefore not a covered Part D drug. Plaintiff appealed to the Medicare Appeal Counsel ("MAC") of the United States Departmental Appeals Board, and the MAC upheld the denial. Plaintiff now appeals.

## DISCUSSION

### I.  Standard of Review

■ The Court has jurisdiction to set aside agency decisions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Neiman v. Secretary of Dep't of Health & Human Servs.*, 722 F.Supp. 954, 957 (E.D.N.Y. 1988) (citing *St. Mary's Hospital v. Blue Cross & Blue Shield Ass'n* 788 F.2d 888, 890 (2d Cir. 1986)).

■ In evaluating an agency's interpretation of a statute, the court first examines "whether Congress has directly spoken to the precise question at issue," and if the statute is silent or ambiguous, then the court determines "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute is ambiguous, the Court is obligated to "defer to any reasonable construction of the statute" by the Secretary, and "may not substitute its own judgment" for that

of the agency, even if the Court would otherwise have reached a different conclusion. *Good Samaritan Hospital v. Shalala*, 85 F.3d 1057, 1060 (2d Cir. 1996).

### II.  Interpreting the Statutory Definition of "Covered Part D Drug"

Medicare is the federal medical insurance program that provides coverage for aged and/or disabled persons, and is governed by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. ("Medicare statute"). Medicare "Part D" is an optional prescription drug benefit program. Under Part D, qualified Medicare beneficiaries may enroll in a variety of Part D plans, administered by private insurance companies, that contract with CMS to provide coverage for drugs that have been identified by the Medicare statute as "covered part D drugs." The central issue here is the meaning and scope of the statutory definition of "covered part D drug." 42 U.S.C. § 1395w–102(e)(*l* ) provides:

(e) **Covered part D drug defined**

(1) In general

Except as provided in this subsection, for purposes of this part, the term **"covered part D drug"** means—

(A) a drug that may be dispensed only upon a prescription and that is described in subparagraph A(i), (A)(ii), or (A)(iii) of section 1396r–8(k)(2) of this title [primarily, FDA-approved drug employed for on-label uses]; or

(B) a biological product described in clauses (i) through (iii) of subparagraph (B) of such section or insulin described in subparagraph (C) of such section and medical supplies associated with the injection of insulin (as defined in regulations of the Secretary),

**and such term includes** a vaccine licensed under section 262 of this title (and, for vaccines administered on or

after January 1, 2008, its administration) and **any use of a covered part D drug for a medically accepted indication (as defined in [section 1396r–8(k)(6) of this title] ).**" 42 U.S.C. § 1395w–102(e)(1) (emphasis added).

▪ The question before the Court is whether, in order to be a covered Part D drug, plaintiff's use of Budesonide must satisfy the "medically accepted indication" criteria listed in 42 U.S.C. § 1396r–8(k)(6), or whether the "medically accepted indication" criteria merely provide an alternative definition for a covered drug, as opposed to an additional requirement for coverage. *See* 42 U.S.C. § 1395w–102(e)(4)(A)(ii).

Section 1396r–8(k)(6) defines a "medically accepted indication" as: (1) a use approved by the FDA; or (2) a use "supported by one or more citations included or approved for inclusion in any of the compendia described in section (g)(*l* )(B)(i) of this section." 42 U.S.C. § 1396r–8(k)(6). The compendia, which are reference manuals listing various drugs and the conditions for which they are typically prescribed, include: (1) the American Hospital Formulary Service Drug Information; (2) the United States Pharmacopeia–Drug Information (or its successor publications); and (3) the DRUGDEX Information Systems. 42 U.S.C. § 1396r–8(g)(*l* )(B)(i).

Plaintiff concedes that his manner of use of Budesonide is not FDA-approved and does not satisfy the compendia requirement. However, he argues that the phrase "any use of a covered Part D drug for a medically accepted indication," 42 U.S.C. § 1395w–102(e)(1), is merely illustrative, and not definitional, and that his use of Budesonide need not be for a "medically accepted indication" to merit Part D prescription coverage. The Secretary argues the opposite: that the phrase "['covered part D drug'] includes … any use of a

covered part D drug for a medically accepted indication" is definitional, and should be read to mean, "includes *and is limited to* a [licensed vaccine] *and* any use of a covered part D drug for a medically accepted indication…"

Several courts have had occasion to examine the question, and all but one have rejected plaintiff's interpretation in favor of the Secretary's. *See e.g., Nievod v. Sebellius,* , 2013 WL 503089, 2013 U.S. Dist. LEXIS 17550 (N.D. Cal. Feb. 8, 2013). *See also Roeder v. Burwell,* 197 F.Supp.3d 887 (E.D. Va. 2016) (collecting cases, and finding that the plain language of the Statute covers the use of medications only for a medically accepted indication); *Diamond v. Secretary,* 2015 WL 367010, 2015 U.S. Dist. LEXIS 9271 (N.D. Ohio 2015) (same); *Broome v. Burwell,* 2015 WL 1526532, 2015 U.S. Dist. LEXIS 44040 (D. Or. 2015) (summarizing and adopting the reasoning of *Nievod* ); *Rickhoff v. United States Sec'y for the Dep't of Health & Human Servs.,* 2012 WL 6177411, 2012 U.S. Dist. LEXIS (D. Ariz. Dec. 11, 2012) ("Fentanyl in lozenge form is not a 'medically accepted indication' for non-cancer patients and thus is not a covered Part D drug"); *Kilmer v. Leavitt,* 609 F.Supp.2d 750, 753 (S.D. Ohio 2009) ("the medically accepted indication clause must be read as a limitation"). *But see Layzer v. Leavitt,* 770 F.Supp.2d 579, 587 (S.D.N.Y. 2011) ("Congress did not intend to impose the Compendia Requirement").

Two of the more recent, and instructive, examinations of the statute are found in *Nievod,* 2013 WL 503089, 2013 U.S. Dist. LEXIS 17550, and *Broome,* 2015 WL 1526532, 2015 U.S. Dist. LEXIS 44040.

Following the order of analysis in *Nievod,* the Court first examines the structure of 42 U.S.C. § 1395w–102(e)(1), and observes the respective positions of the dis-

junctive term "or" between subparagraphs (e)(1)(A) and (e)(1)(B), and the conjunctive term "and" at the beginning of the third paragraph to (e)(1). *See Nievod*, 2013 WL 503089 at *7, 2013 U.S. Dist. LEXIS 17550 at *6–*7. I find that, "taken together, the provisions of the third paragraph logically convey that the medically accepted indication requirement applies generally *and in addition* to the provisions of subsections (A) and (B)." *Id.* at *7, 2013 U.S. Dist. LEXIS 17550 at *7 (emphasis in original). Next, the Court has examined the context in which "and such term includes" appears. Subparagraphs (e)(1)(A) and (e)(1)(B) both cross-reference 42 U.S.C. § 1396r–8(k)(2), which "identifies each of the aforementioned items as defining what constitutes a 'covered outpatient drug.'" *Id.* Specifically excluded from the definition of a "covered outpatient drug" is any drug "used for a medical indication which is not a medically accepted indication." 42 U.S.C. § 1396r–8(k)(3). Stated differently, because off-label uses are specifically excluded from the definition of "covered outpatient drug," "all of the drugs identified in the definition of a covered Part D drug must [therefore] satisfy the medically accepted indication requirement." *Nievod*, 2013 WL 503089 at *7, 2013 U.S. Dist. LEXIS 17550 at *7. I therefore conclude that, "it would be incongruous to construe section 1395w–102(e)'s reference to 'any use of a covered Part D drug for a medically accepted indication' as anything other than a specific circumscription," or boundary, which cabins file definition of a covered Part D drug. *Id.*

This interpretation of "and such term includes" is further bolstered by "the interplay between the reference to 'biological product' and 'vaccines' in the second and third paragraphs of section 1395w–102(e)." *Id.* at *8, 2013 U.S. Dist. LEXIS 17550 at *8. The second paragraph of section 1395w–102(e) defines "biological product," and cross-references 42 U.S.C. 1396r–

8(k)(2)(B), which "specifically excludes vaccines." *Id.* In contrast, the third paragraph of section 1395w–102(e) provides: "and such term *includes* a vaccine licensed under section 262 of this title (and, for vaccines administered on or after January 1, 2008, its administration)." 42 U.S.C. § 1395w–102(e)(1) (emphasis added). Because the definition of a "biological product" excludes vaccines, "it would be illogical to construe the reference to vaccines as [merely illustrative], when, in the preceding paragraphs, vaccines are expressly excluded." *Nievod*, 2013 WL 503089 at *8, 2013 U.S. Dist. LEXIS 17550 at *8.

Lastly, the "illustrative interpretation" of "includes" under the third paragraph of (e)(1), which plaintiff champions, "cannot be reconciled with the ... lengthy and detailed definition of 'medically accepted indication' within the statutory definition of 'covered Part D drug.'" *Id.* The definition of "medically accepted indication" under Section 1395w–102(e) is divided into two parts. *See* 42 U.S.C. § 1395w–102(e)(4)(A). The first, which applies to Part D drugs used in chemotherapy, incorporates the definition of "medically accepted indication" in Medicare Part B, codified at 42 U.S.C. § 1395x(t)(2)(B). *See* 42 U.S.C. § 1395w–102(e)(4)(A)(i). The second part, which applies to any other covered Part D drug, incorporates a narrower definition of "medically accepted indication," codified at 42 U.S.C. § 1396r–8(k)(6). See 42 U.S.C. § 1395w–102(e)(4)(A)(ii); *Nievod*, 2013 WL 503089 at *9 n.3, 2013 U.S. Dist. LEXIS 17550 at *9 n.3 ("[u]nlike section 1396r–8(k)(6), the definition for medically accepted indication set forth in Medicare Part B is broader in that it permits the use of certain 'peer reviewed medical literature'" (citation omitted)). This detailed definitional framework "belies Plaintiff's assertion that the reference to the medically accepted indication re-

quirement [in the third paragraph of (e)(1) ] is merely 'illustrative' and not restrictive." *Nievod*, 2013 WL 503089 at *9, 2013 U.S. Dist. LEXIS 17550 at *23.

Accordingly, "[i]n the case of an off label use of a Part D drug, coverage under Part D is dependent upon whether the Medicare enrollee is able to satisfy the compendia requirement." *Id.* at *9, 2013 U.S. Dist. LEXIS 17550 at *24. Again, there is no dispute here that the use of Budesonide to treat plaintiff's condition (eosinophilic esophagitis) does not meet that requirement.

Although the Court acknowledges the clumsy draftsmanship of the statute and sympathizes with plaintiff's desire to obtain coverage for Budesonide, this Court must apply the statute and I am persuaded by the reasoning in *Nievod*, and the other cases on point, with respect to the meaning of the statute. I find that the Secretary's interpretation of the statutory language is reasonable and supported by substantial evidence. *See Roeder*, 197 F.Supp.3d 887 (collecting cases, and finding that the plain language of the statute covers the use of medications only for a medically accepted indication).

## CONCLUSION

For the foregoing reasons, I find that the Secretary's interpretation of the statute at issue was reasonable, and supported by substantial evidence. The Secretary's motion for judgment on the pleadings (Dkt. # 10) is granted, and the complaint is dismissed.

IT IS SO ORDERED.